```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

April Connolly                        :
     Plaintiff                        :
     v.                               : Case No. 3:13-CV-2717
Progressive Northern Ins. Co.,        : (Judge Richard P. Conaboy)
Progressive Preferred Ins. Co.,
Progressive Casualty Insurance Co.    :
     Defendants                       :
_____
```

Memorandum

We consider here a Motion for Summary Judgement (Doc. 27) filed by Defendants Progressive Northern Insurance Company, Progressive Preferred Insurance Company, and Progressive Casualty Insurance Company on November 5, 2014.  Defendants' seek dismissal of Plaintiff April Connolly's claim for stacked underinsured motorist "UIM" benefits, dismissal of Plaintiff's statutory bad faith claim, and dismissal of all claims against Progressive Casualty Insurance Company and Progressive Northern Insurance Company on the grounds that neither was ever in privity of contract with the Plaintiff.  We shall consider each argument in turn.

**I.   Factual Background.**

This case arises from a motor vehicle accident that occurred on February 26, 2009 (Doc. 29, ¶ 1; Doc. 31, ¶ 1).  The accident in question involved a vehicle driven by Plaintiff and one driven by a Thomas Thornton.  (Doc. 29, ¶ 2; Doc. 31, ¶ 2).  At the time of the

1

accident, Plaintiff was covered by an automobile insurance policy issued by Defendant Progressive Northern Insurance Company, specifically Policy No. 10418087-8.  (Doc. 1-2, ¶ 5; Doc. 2, ¶ 5). That policy provided underinsured motorist benefits of up to $100,000.00 per person and $300,000.00 per accident.  (Id.) Plaintiff and Defendants disagree as to whether Plaintiff's claim that she was also covered by automobile insurance policies issued by Progressive Preferred Insurance Company and Progressive Casualty Insurance Company at the time of the accident in question is accurate.  (Id.).  The parties also disagree as to whether Progressive Northern Insurance Company Policy No. 10418078-8 (the "Policy") provided for stacked IUM coverage.  (Doc. 29, ¶ 4; Doc. 31, ¶ 4).  The stacking issue is significant because the Policy covered three vehicles.  (Doc. 1-2, Ex. B; Doc. 29-2 at 3).

The parties agree that the accident in question was not caused by Plaintiff.  (Doc. 1-2, ¶ 7; Doc. 2, ¶ 7).  The parties also agree that Plaintiffs sustained physical injuries in the accident. (Doc. 1-2, ¶ 8; Doc. 2, ¶ 8).  The parties dispute the severity of Plaintiff's injuries (Id.).  Mr. Thornton's insurance carrier ultimately paid its liability limits of $250,000.00 to Plaintiff on December 22, 2010.  (Doc. 1-2, ¶ 24; Doc. 2, ¶ 24).  Defendant Progressive Northern Insurance Company consented to the third party settlement with Thornton's carrier.  (Doc. 1-2, ¶ 26; Doc. 2, ¶ 26).

2

By letter dated December 22, 2010, Plaintiff's counsel advised Defendants that "this tender [that of Thornton's insurer] does not satisfy the claims arising from the bodily injuries suffered by our client, and we anticipate filing an underinsured motorist claim." (Doc. 1-2, ¶ 25; Doc. 2, ¶ 25). By letter dated March 22, 2011, Plaintiff's counsel forwarded to Defendants certain documentation in support of her underinsured motorist claim. (Doc. 29, ¶ 19; Doc. 31, ¶ 19). Plaintiff last treated for her injuries incident to the auto accident on August 27, 2010 and there is no evidence that Plaintiff underwent additional surgery after the repair of her lacerations immediately following the accident. (Doc. 29, ¶ 27; Doc. 31, ¶ 27). Defendants' agent wrote to Plaintiff's counsel on April 28, 2011 and advised him that her review of the claim persuaded her that "the value of Ms. Connolly's bodily injury claim falls with the $250,000.00 policy limit of the tortfeasor. (Doc. 29, ¶ 29; Doc. 3, ¶ 29).

On June 19, 2011, Progressive assigned the Connolly claim to Jane Kennedy, a Progressive claims representative since 2001. (Doc. 29, ¶¶ 30-31; Doc. 31, ¶¶ 30-31). During a June 29, 2011 telephone conversation, Plaintiff's counsel informed Ms. Kennedy that he would contact Plaintiff to discuss her injury status and would provide Progressive with an update on Plaintiff's treatment. (Doc. 29, ¶ 34; Doc. 31, ¶ 34). On seven occasions between August 11, 2011 and January 2, 2012, Ms. Kennedy left telephone messages

for Plaintiff's counsel and she also wrote him letters dated November 29, 2011 and January 27, 2012 requesting contact to discuss Plaintiff's claim.  (Doc. 29, ¶¶ 35-36; Doc. 31, ¶¶ 35-36). Plaintiff's counsel did not respond to any of these calls or letters. (Doc. 29, ¶ 37; Doc. 31, ¶ 37).

On February 13, 2012, Ms. Kennedy called Plaintiff's counsel and was informed by him that Plaintiff's surgery was still happening and that he would call her back to discuss the claim. (Doc. 29, ¶¶ 38-40; Doc. 31, ¶¶ 38-40).  Plaintiff's counsel did not call Ms. Kennedy back between February 13, 2012 and March 28, 2012.  (Doc. 29, ¶ 41; Doc. 31, ¶ 41).  On March 28, 2012 and again on May 7, 2012, Ms. Kennedy left telephone messages for Plaintiff's counsel that were not returned.  (Doc. 29, ¶¶ 41-43; Doc. 31, ¶¶ 41-43).  Ms. Kennedy also wrote to Plaintiff's counsel on February 29, 2012 and March 28, 2012 requesting updates on the course of Plaintiff's treatment.  (Doc. 29, ¶¶ 41-42; Doc. 29-1, Ex. A at 38-40; Doc. 31, ¶¶ 41-42).  Plaintiff's counsel did not respond to any of Ms. Kennedy's calls or letters between February 13, 2012 and July 18, 2012.  (Doc. 29, ¶ 43; Doc. 31, ¶ 43).[1]

On March 12, 2013, Plaintiff filed a Writ of Summons in the Monroe County Court of Common Pleas against all three Defendants.

---

[1] Plaintiff's counsel admits that he did not return Ms. Kennedy's calls of March 28 and May 7, 2012 or respond to her letters of February 29, 2012 and March 28, 2012 "to the extent that Ms. Kennedy's notes indicate such." Ms. Kennedy's notes do indicate such (See Doc. 29-1, Ex. A at 38-40) and, thus, the Court deems the assertions regarding the existence of these calls and letters to be admitted.

(Doc. 29, ¶ 46; Doc. 31, ¶ 46).  On March 28, 2013, Ms. Kennedy spoke with Plaintiff's counsel's paralegal and requested updated information regarding Plaintiff's treatment status.  (Doc. 29, ¶¶ 47-48; Doc. 31, ¶¶ 47-48).  Progressive's counsel, Jennifer Levan, wrote to Plaintiff's counsel on July 22, 2013 and September 13, 2013 to request additional information to aid in evaluation of Plaintiff's UMI claim.  (Doc. 29, ¶¶ 52-54; Doc. 31, ¶¶ 52-54).  Plaintiff's counsel never provided a response to Ms. Kennedy's and Ms. Levan's telephone calls and letters between March 28, 2013 and October 8, 2013.  (Doc. 29, ¶ 56; Doc. 31, ¶ 56).  On October 8, 2013, Plaintiff filed a complaint in state court initiating this lawsuit.  (See Doc. 1-2 at P. 3). [2]  Neither Plaintiff nor her counsel had provided Progressive with any medical records or other documentation of her injuries since April 28, 2011.  (Doc. 29, ¶ 57; Doc. 31, ¶ 57).

    Plaintiff asserts in her complaint that she is entitled to stacked UIM coverage.  (Doc. 29, ¶ 58; Doc. 31, ¶ 58).  Defendant disagrees and contends that the Policy did not provide stacked coverage because Plaintiff's parents had rejected stacked UIM coverage at the inception of the Policy.  (Doc. 29, Ex. H). Plaintiff contends that the aforementioned rejection is not dispositive because other policies written by Progressive which did not contain stacking rejections may have covered Plaintiff at the

---

[2] This action was removed to this Court on diversity grounds on November 5, 2013 (Doc. 1).

time of the accident.  (Doc. 31, ¶¶ 59-60).  Plaintiff claims that there is an ambiguity as to which policy controlled because Plaintiff has never provided a "certified" copy of the policies.  (Doc. 30, 5-7).  Plaintiff also claims that this refusal to provide certified copies of the relevant insurance documents and Defendants' refusal to conduct a reasonable investigation of Plaintiff's claim combine to demonstrate statutory bad faith on Defendant's part.  (Id. At 12).

**II.   Summary Judgment Standard.**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  A disputed fact is "material" if it could affect the outcome of the suit, given the applicable substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d. 202 (1986).  A dispute about a material fact is "genuine" if the evidence presented "is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor, *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir.2005).  Nonetheless, the party opposing summary judgment must support each essential element of the claim with concrete evidence in the

6

record. *Celotex Corp. V. Catrett*, 477 U.S. 317, 322-23, (1986). This requirement upholds the underlying purpose of the rule, which is to avoid a trial "in cases where it is unnecessary and would only cause delay and expense." *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976). Therefore, if, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine issue of material fact, summary judgment is appropriate. *Celotex, supra*, at 322; Wisnieweski v. *Johns-Manville Corp*., 812 F.2d 81, 83 (3d Cir.1987). If the non-movant's evidence is merely speculative, conclusory, "or is not significantly probative, summary judgment may be granted." *Anderson, supra*, at 249-50 (internal citation omitted).

 A plaintiff's mere belief is not enough to create a dispute of material fact sufficient to survive summary judgment. See *Lexington Ins. Co. V. W. Pa. Hosp.*, 423 F.3d 318, 333 (3d Cir. 2005)(holding that speculation is not sufficient to defeat a motion for summary judgment). Our circuit has stated: "...summary judgment is essentially 'put up or shut up' time for the non-moving party; the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument.*" Berckeley Inv. Grp., Ltd. V. Colkitt,* 455 F.3d 195, 201 (3d Cir.2006).

7

**III. Discussion:**

    **A.    Whether Defendants Progressive Preferred Insurance Company and Progressive Casualty Insurance Company are Properly Named Party Defendants in this Case?**

Plaintiff's Complaint included three exhibits: (1) Exhibit A, a declaration sheet from Progressive Northern Insurance Company Policy No. 10418087-0 which specified a coverage term of six months and expired on March 10, 1998; (2) Exhibit B, a renewal form for Progressive Northern Insurance Company Policy No. 10418087-8 with a policy period running from September 9, 2008 through March 9, 2009, a time frame that included the date of the accident at issue in this case; and (3) Exhibit C, an application for Progressive Preferred Insurance Company Policy No. 48249371-0 dated March 26, 2009, one month after the accident in question occurred. Both Plaintiff's Exhibit A and Plaintiff's Exhibit B are evidence of a contractual relationship between Plaintiff and Progressive Northern Insurance Company. Indeed, Defendant Progressive Northern Insurance Company acknowledges that it insured Plaintiff's vehicle at the time of the accident.

Plaintiff's Exhibit C evidences her application for coverage with Progressive Preferred Insurance Company dated March 26, 2009. The Court has not been presented with documentation regarding whether this application ever ripened to a policy of insurance and the answer to that question is irrelevant. Because the application

8

postdates the date of Plaintiff's accident, it does not constitute any evidence that Progressive Preferred Insurance Company ever insured Plaintiff with respect to that accident and, accordingly, Progressive Preferred Insurance Company is not a proper party Defendant in this matter.

Plaintiff has also named Progressive Casualty Insurance Company as a defendant on grounds that are unclear.  Plaintiff does provide the Court with excerpts from the deposition (Doc. 30, 14-17) of Jane Kennedy that establish that Ms. Kennedy was unclear whether her employer was Progressive Northern Insurance Company, Progressive Preferred Insurance Company, or Progressive Casualty Insurance Company.  Be that as it may, the Court is unconvinced that Ms. Kennedy's apparent confusion as to the precise corporate identity of her employer is in any way indicative of a contractual relationship between Plaintiff and Progressive Casualty Insurance Company.  Thus, the Court concludes that the record is devoid of evidence establishing a contract of insurance between Plaintiff and Progressive Casualty Insurance Company at the time of the accident and, for that reason, Progressive Casualty Insurance Company is not a proper party defendant in this matter.

Due to the aforementioned lack of evidence of the existence of any contract of insurance between Plaintiff and Progressive Preferred Insurance Company or Progressive Casualty Insurance Company, both parties will be awarded summary judgment and will be

deleted from the docket in this case.

**B.    Whether Defendant Progressive Northern Insurance Company has Established that Plaintiff's UIM Coverage was Nonstacked?**

Defendant correctly observes that Pennsylvania law (which this Court sitting in diversity must apply) clearly provides that, once an insured executes a rejection of stacked coverage, there is no need for the insured to obtain a new rejection each time the policy comes up for renewal or the insured adds a vehicle to the policy. Sackett v. Nationwide Mutual Insurance Company, 919 A.2d 194(Pa. 2007). Defendant has also established that Plaintiff's parents - - the actual policy holders in this case - - executed a rejection of stacked UIM coverage with respect to Progressive Northern Insurance Company Policy No. 10418087-0 on August 6, 1998 (Doc. 1-2 at 20). Defendant has also produced a detailed Affidavit of Tiffany Burton (Doc. 29-4) in which Ms. Burton painstakingly details the history of Progressive Northern Insurance Company Policy No. 10418087. [3] Ms. Burton's Affidavit describes in chronological order the history of Policy No. 10418087 through 21 renewals between August of 1998 and March of 2009.  Yet, for all of its considerable detail (147 pages of exhibits), Ms. Burton does not explain why the core number of the policy - - 10418087 - - is

---

[3] N.B. The policy which Ms. Burton describes in her Affidavit does not contain a suffix - - e.g. "-0", "-1", "-2", etc.

10

augmented at various points in time with the addition of final numerals from 0 through 9. The Court is left guessing as to the significance of these different end numerals.  The Court notes that the affidavit indicates some 21 renewals of the policy over a period of approximately 10.5 years.  The Court notes also that the policy regularly renewed each March and September during that time.  Thus, nagging questions emerge: If there were 21 renewals, why are there not an equal number of different suffixes?  Were these changes in nomenclature reflective of some substantive differences in the policy over time that preclude a finding that they were merely renewals of the initial policy?  These questions are not answered or even addressed in the Burton Affidavit.

Because the protection Sackett, supra, would afford Defendant is predicated upon a conclusion that the various suffixes (0 through 9) affixed to the core policy number in the documents that have been presented to the Court indicate only renewals of that policy, the Court cannot conclude that stacking is unavailable to the Plaintiff at this point.  For all its copious detail, the Burton Affidavit's failure to explain the reason why the insurer periodically modified the final number of the Connolly policy leaves the Court unsure as to whether the Progressive Northern Insurance Company policy in force at the time of the accident (No. 10418087-8) was identical to the policy issued in 1998 pursuant to which the Connolly's rejected stacked UIM benefits.  Due to this

11

uncertainty in the record, the Court must deny Defendant's Motion for Summary Judgment on the stacking issue.

**C.  Whether Defendant is Entitled to Summary Judgment Regarding Plaintiff's Allegations of Statutory Bad Faith?**

Count II of Plaintiff's Complain (Doc. 1-2 at 11-13) accused Defendant of statutory bad faith pursuant to 42 Pa. C.S.A. § 8371. The standard for determining such bad faith has been described as follows:

> "Bad faith" on the part of an insurer is any frivolous or unfounded refusal to pay the proceeds of a policy; it is not necessary that such refusal be fraudulent.  For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing) through some motive of self-interest or ill-will; mere negligence or bad judgment is not bad faith.

Northwestern Mutual Life Insurance Company, v. Babayan, 430 F.3d 121, 137 (3d. Cir. 2005)(quoting Terletsky v. Prudential Property and Casualty Insurance Company, 649 A.2d 680, 688 (Pa. Super. 1994).  To succeed on a bad faith claim, a Plaintiff must demonstrate (1) "that the insurer lacked reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis."  Berdetto v. State Farm

Fire and Casualty Company, 837 F.Supp 2d, 480, 484 (M.D. Pa. 2011), affirmed 2013 WL 175175 (3d. Cir. January 17, 2013)(quoting Klinger v. State Farm Mutual Auto Insurance Company, 115 F.3d 230, 233 (3d. Cir. 1997).  In addition, a Plaintiff must demonstrate bad faith by clear and convincing evidence.  Polselli v. Nationwide Mutual Fire Insurance Company, 23 F.3d 747, 751 (3d. Cir. 1994).

    For an insurance company to show that it had a reasonable basis it need not demonstrate its investigation yielded the correct conclusion, or that its conclusion more likely than not was accurate.  Krisa v. Equitable Life Assurance Company, 113 F.Supp 2d. 694, 704(M.D.Pa. 2000).  Nor is the insurance company required to show that "the process by which it reached its conclusion was flawless or that the investigatory methods it employed eliminated possibilities at odds with its conclusion."  (Id.)  Instead, an insurance company must show it conducted a review or investigation sufficiently thorough to yield a reasonable foundation for its action. (Id.).  "The 'clear and convincing' standard requires that the Plaintiff show 'that the evidence is so clear, direct, weighty and convincing as to enable a clear conviction without hesitation, about whether or not the Defendants acted in bad faith.'" J. C. Penney Life Insurance Company v. Pilosi, 393 F.3d 356, 367 (3d. Cir. 2004)(internal citation omitted).

    Plaintiff's bad faith claim is grounded on assertions that (1) Defendant failed to communicate with Plaintiff and Plaintiff's

13

counsel regarding provision of "a certified copy of the policies" in order to clarify the issue regarding stacked coverage; [4] and (2) Defendant failed to perform a reasonable and timely investigation of Plaintiff's claim as indicated by Defendant's failure to schedule Plaintiff's deposition or even request her Statement Under Oath ("SUO"). (Doc. 30 at 12).

Defendant responds that the instant case involves a genuine dispute over the value of Plaintiff's UIM claim and, as such, bad faith cannot be demonstrated here.  Defendant cites various facts that certainly mitigate against the finding of bad faith, including:

    (1)    The Plaintiff's receipt of a $250,000.00 recovery from the tortfeasor;

    (2)    Plaintiff's release to "normal activity" with "no restrictions" approximately one month after the accident;

    (3)    An orthopedic physician's opinion that Plaintiff's lacerations were "healed" less than two months after the accident;

    (4)    The fact that Plaintiff last sought medical treatment for her injury in August of 2010; and

    (5)    Plaintiff's refusal to provide Defendant with updated information on her physical status despite

---

[4] Plaintiff does not provide any caselaw to support her entitlement to "certified copies".

Defendant's numerous requests for such information. (Doc. 28 at 20; see also pages 3-5, ante).

This Court will leave it to a jury to determine the reasonableness of Defendant's conduct toward Plaintiff.  One may wonder why Defendant did not schedule Plaintiff's deposition or at least solicit her SUO and see these omissions as possible evidence of an unreasonably slow investigation on Defendant's part.  On the other hand, one could conclude that Defendant reasonably considered updated medical information on Plaintiff a necessary precursor to its request for a deposition or SUO. [5]  In any event, the caselaw discussed above will require that Plaintiff demonstrate, by clear and convincing evidence, either that Defendant unreasonably delayed its investigation of her claim or refused to make an offer with reckless disregard of medical documentation in its possession that would clearly indicate that she was due additional money under the policy in question.  The Court has not been provided with medical documentation from which it could categorically determine that Plaintiff had not received a full recovery from the tortfeasor's carrier.  Thus, it appears that the credibility of the witnesses on these points will be a key issue in the determination of the bad faith issue.  As such, the Court cannot resolve the question on the record and Defendant's Motion for Summary Judgment on this point

---

[5] The Plaintiff's failure to provide updated medical information despite numerous requests by Defendant over many months is not in dispute.

must be denied.

**IV. Conclusion.**

    For the foregoing reasons, Defendant's Motion for Summary Judgment will be granted in part and denied in part.  Defendant's motion is granted to the extent that Progressive Preferred Insurance Company and Progressive Casualty Insurance Company are dismissed as defendants.  Defendant's motion with respect to the issues of stacking and bad faith will be denied.  A separate Order shall issue contemporaneously herewith.

BY THE COURT

                                          S/Richard P. Conaboy
                                          Honorable Richard P. Conaboy
                                          United States District Court

Dated: February 4, 2014